IN RE ESTATE OF EMMA ELIZA CURTIS.

October Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed January 23, 1915.

*Taxation—Inheritance Tax—Exemption of Bequests to Charities —Statutes—Construction—Charitable Trusts—"Society".*

In view of the public policy of this State, revealed by a long course of legislation and by Const. ch. 2, §41, providing that charitable societies or associations shall be encouraged and protected in the enjoyment of their privileges and immunities, the provision of P. S. 822, as amended by §1, No. 55, Acts 1910, exempting from the inheritance tax thereby imposed every "charitable, educational, or religious society or institution" created and existing under the laws of this State, will be liberally construed in favor of such charities.

The court in construing a statute must disregard even the plain letter thereof where that is necessary in order to give effect to the manifest intent of the Legislature.

Under P. S. 822, as amended by §1, No. 55, Acts 1910, imposing an inheritance tax and exempting therefrom any charitable or educational society or institution created and existing under and by virtue of the laws of this State, and having its principal office therein, the Legislature intended to levy such tax on all foreign, and to exempt all domestic, charitable societies and institutions, regardless of whether they were incorporated.

Where a will gave specified property to designated trustees, whom it advised, but did not require, to incorporate, one-fifth of the income to accumulate, and the remainder thereof to be expended in aiding needy young men and women to secure a common school or a university education or to learn a trade or profession, the trust is manifestly a charitable one.

Under P. S. 822, as amended by §1, No. 55, Acts 1910, a society or institution organized under a will to receive and administer a legacy in trust for charitable uses is as much entitled to the benefit of the exemption from the inheritance tax imposed by the statute as are similar societies and institutions organized and existing at the death of the testator.

Where a will gave specified property to three trustees to hold and administer as a charitable trust, with provision for their perpetual succession, and the trustees organized and accepted the trust, they are a "society" within the meaning of P. S. 822, as amended by §1, No. 55, Acts 1910, exempting legacies to domestic charitable societies from the inheritance tax imposed by the statute; a "society," within the meaning of the statute, includes bodies of men united for the advancement of religion and learning, or for other pious or charitable purposes.

This is a proceeding brought directly to the Supreme Court for the county of Chittenden, under the provisions of P. S. 835-836, to review a decree of the probate court within and for the district of Chittenden, holding that a certain bequest made by the will of Emma E. Curtis is subject to the inheritance tax imposed by P. S. 822, as amended by §1, No. 55, Acts 1910. The opinion fully states the case.

*Ezra M. Horton* for the estate.

*Charles A. Plumley*, Commissioner of Taxes, and *Rufus E. Brown*, Attorney General, for the State.

TAYLOR, J. This is a proceeding under the provisions of P. S. 835 and 836 to review the decree of the probate court for the district of Chittenden in reference to a certain inheritance tax in the matter of the estate of one Emma E. Curtis, late of Burlington in said district deceased. The facts material to the inquiry certified up by the probate court are as follows: Emma

E. Curtis died at Burlington in said district April 9, 1910. She left a will which was duly admitted to probate on June 4, 1910. The twenty-eighth clause of said will reads as follows: ''Twenty-eight. I give and devise to Charles W. Woodhouse, Heman W. Allen and Lorenzo E. Woodhouse of the city of Burlington, Vermont, my home place on the north side of Main Street in said city of Burlington, the dwelling house thereon being numbered 316 of said Main Street, subject to the life estate therein, hereinbefore devised to Jennie Eliza Lattin, and the avails of the trust fund created by the 'fourth' section of this my will, subject to the beneficial interest therein given to the said Jennie Eliza Lattin so long as she shall survive me, and I direct my executor hereinafter named to dispose of the avails of said trust fund created by said section fourth, at the death of said Jennie Eliza Lattin, accordingly, and any part of my estate included in any of the foregoing sections of this my will which, by the provisions thereof, are not hereby fully disposed of, and all the rest and residue of my estate of whatsoever kind and wheresoever situate,—in trust for the following purposes:

To manage and invest the same according to their best discretion, and to use and expend the income and profit thereof, except one fifth part which shall each year be added to and constitute a part of the principal fund of this trust until such time as said principal fund shall amount in all to the value of two hundred and fifty thousand dollars, in aiding young men and women to obtain a common school or university education or both, or to learn a trade, handicraft, business, or profession or to obtain instruction in domestic science or other useful knowledge provided that only those persons be aided who in the best judgment of my said trustees or their successors, are worthy to receive such aid, and who are in need of the same.''

The twenty-ninth clause of the will provided for filling vacancies among said trustees; the thirtieth clause advised, but did not require, the trustees to incorporate for the purpose of carrying out the object of the trust and authorized the trustees, or their successors, to transfer the trust fund to such corporation. when formed, ''to be thereafter held, used, managed, expended and controlled by the said corporation, under its charter, according to the intent and purposes of the provisions of this my will in relation to said trust.''

Charles W. Woodhouse, Heman W. Allen and Lorenzo E. Woodhouse were nominated and appointed as trustees of the legacy created under the twenty-eighth clause of said will and duly qualified and entered upon the discharge of the duties of the trust. They have not hitherto incorporated agreeably to the recommendation of the testatrix. On Dec. 7, 1910, they organized by electing Charles W. Woodhouse as president, Heman W. Allen as vice-president and Lorenzo E. Woodhouse as treasurer. They also selected Arthur W. Hill, the assistant cashier of the Merchant's National Bank of Burlington, as clerk of the board of trustees. The trustees are officers of said Bank and all the business relating to the trust is transacted at said Bank in Burlington. Said legacy when decreed will pass to such trustees.

The executor of the will claimed in the probate court that said trust fund was exempt as being a legacy to an educational institution within the provision of P. S. 822 as amended by No. 55, Acts of 1910, while the commissioner of taxes claimed the contrary. The probate court determined, as a matter of law on the facts found, that the fund was not exempt, and that, after making all deductions provided for by statute, the tax on the legacy passing to said trustees under the twenty-eighth clause of the will is $3,776.85; whereupon the executor and commissioner of taxes joined in a written application to have the findings and decree of the probate court certified to this Court for review.

P. S. 822, which assesses taxes on inheritances, has been thrice amended. The case was argued as though the section as left by the amendment of 1910 applies. Although the testatrix died prior to the adoption of the amendment of 1910 we have no occasion to consider whether the statute as it stood in 1908 or in 1910 would control, as none of the amendments affect the question presented, and we will examine the section as left by the amendment of 1910. So far as material it reads: "Every person other than the father, mother, * * *; and every charitable, educational or religious society or institution other than one created and existing under and by virtue of the laws of this State and having its principal office herein, that shall receive in trust or otherwise a legacy or distributive share consisting of or arising from property or an interest therein passing by will. the law of descent or the decree of a court in this State * · * * shall, except as otherwise provided in this chapter, pay to the State a

tax of five per cent. of the value in money of such legacy or distributive share." No. 55, Acts of 1910, §1.

We are required to construe the statute so as to give effect to the intention of the Legislature. It is argued by the commissioner of taxes, citing *Willard* v. *Pike,* 59 Vt. 202, that in construing statutes of exemption from taxation regard must be had to the settled rule that they are construed most strongly against those who claim their benefits. While this may be a correct statement of the rule as applied to exemptions from general taxation, it does not follow that it is applicable here. The taxation of inheritances is a form of special taxation. *In re Euston's Est.,* 113 N. Y. 174, 21 N. E. 87. It is said in *Erdman* v. *Martinez,* 184 U. S. 578, 583, 46 L. ed. 697, "It is an old familiar rule of the English courts, applicable to all forms of taxation, and particularly special taxes, that the sovereign is bound to express its intention to tax in clear unambiguous language, and that a liberal construction be given to words of exception * * though the rule regarding exemptions from general laws imposing taxes may be different." Blackmore and Bancroft in their work on Inheritance Taxes at page 196 say: "We believe the true rule is that, as the inheritance tax is a special tax, the intention to impose it in any case must be clearly expressed and words of exemption should be liberally construed."

It is held in some jurisdictions that the law in this respect is to be liberally construed to promote the benevolent purpose of the exemption. *In re Spangler's Est.,* 148 Ia. 333; *Carter* v. *Whitcomb,* 74 N. H. 482, 69 Atl. 779; *In re Graves' Est.,* 171 N. Y. 40, 60 N. E. 787; *In re Harbeck's Est.,* 161 N. Y. 211, 55 N. E. 85; *In re Mergentine's Est.,* 195 N. Y. 572, 88 N. E. 1125; *In re Kerr's Est.,* 159 Pa. 512, 82 Atl. 354. It is held in other jurisdictions that the rule of strict interpretation should be applied. *In re Bull's Est.,* 153 Cal. 715, 96 Pac. 366; *English* v. *Crenshaw,* 120 Tenn. 531, 127 Am. St. Rep. 1025; and in still others that such statutes should be given a reasonable and liberal interpretation with a view to effectuate the intention of the Legislature. *State* v. *Bazille,* 97 Minn. 11, 106 N. W. 93; *State* v. *Vance,* 97 Minn. 532, 106 N. W. 98; *In re Gordon's Est.,* 186 N. Y. 471, 79 N. E. 722.

In considering what the intention of the Legislature was respecting legacies like the one in question we should not lose sight of the fact that public charities have always been regarded

29

with favor in this State. Not only is this shown by the uniform trend of legislation on the subject of general taxation, but the Constitution itself from the earliest time has declared that all religious societies or bodies of men united or incorporated for the advancement of religion and learning or for other pious and charitable purposes, shall be encouraged and protected in the enjoyment of the privileges, immunities and estates which they in justice ought to enjoy. Con. Ch. 2, §64. While the Legislature may enact laws regulating the enjoyment of these privileges, the duty is enjoined upon it to encourage and protect public charities, and we must construe statutes affecting such associations or bodies of men with due regard to this fact. We have no doubt that exemptions from inheritance taxes, so far as they relate to public charities, should be regarded with favor. Reasons of public policy no less potent than those requiring strict construction of statutes exempting from general taxation demand liberality in dealing with exemptions relating to charitable legacies. The settled policy of the Legislature to encourage such charities should not be defeated by an overtechnical and unnecessary construction, but such construction should be given, if consistent with the language of the statute, as will reasonably effectuate this policy.

There is at least room for doubt whether the Legislature intended to tax any charitable trust fund administered within the State. Unlike similar statutes in many of the states, the statute here in terms lays the tax on the beneficiary and not on the legacy or distributive share. The result taxing such funds is reached only by construing the statute as laying the tax on the trustee, while as to other trusts it is evident that the tax is laid upon the *cestui que trust*. The taxability of a gift in trust as to the latter does not depend upon the relationship of the trustee but of the *cestui que trust*. Thus a gift to a person who would be exempt from the tax by reason of relationship in trust for one not exempt would be taxable; while a gift to one not exempt in trust for one who is exempt would not be. The case has been argued upon the theory that these trustees are subject to the tax unless they come within the exemption relating to charitable, educational and religious societies or institutions. The result we reach makes it unnecessary to go outside the case as argued.

Assuming that the trustees are otherwise taxable, we come to the inquiry whether the board of trustees under this will is

"a charitable or educational society or institution created and existing under and by virtue of the laws of this State and having its principal office herein." The commissioner of taxes contends that the words "created and existing," &c., import a corporation and that the Legislature intended to exempt only incorporated societies and institutions. · While the words quoted are better adapted to an incorporated society or institution, it is not to be believed that the Legislature intended to tax unincorporated charitable societies and institutions, which comprise by far the greater number of such societies in the State, and exempt only those incorporated under the laws of the State. We are required to disregard even the plain letter of this provision if necessary to give the section the effect which the Legislature evidently intended it should have. *Montpelier Savings Bank et al.* v. *City of Montpelier,* 73 Vt. 364. It is perfectly evident that what the Legislature intended to do was to tax foreign and exempt domestic societies and institutions of the character named. This interpretation is made doubly certain by reference to P. S. 857, adopted at the same time, in which the word "domestic" is used in place of the quoted words.

The record shows that the business of the board relating to the fund is being done entirely at their office in Burlington; so the question comes to this: Is this board of trustees under the will a charitable or educational society or institution within the meaning of the statute? The case was argued by both parties as though it turned upon the question whether or not they are an educational institution, which is too narrow a view of the question. The fund is manifestly devoted to a charitable purpose— is a charitable trust, (*Willard* v. *Pike,* 59 Vt. 202, 217; *In re Graves' Est.,* 242 Ill. 23, 89 N. E. 672, 34 Am. St. Rep. 302; *Cartier* v. *Whitcomb,* 74 N. H. 482, 69 Atl. 779) and it is only necessary to consider whether by the terms of the will the trustees were at liberty to become, and by their action since have become, a society within the meaning of the statute to receive and administer the trust. The time when the society, if such it was, came into existence is unimportant. We cannot agree with the claim that such legacies are not exempt unless the society is in existence at the time the testator dies. A society or institution organized under a will to receive and administer a legacy in trust is as much entitled to the benefit of the exemption as similar societies or institutions already in existence. *In re Graves' Est.,*

70 N. Y. S. 727, cited by the commissioner of taxes, was reversed by the Court of Appeals. See *In re Graves' Est.*, 171 N. Y. 40, 63 N. E. 787; also *In re Arnot's Est.*, 130 N. Y. S. 499.

A "society" has been defined as an association or company of persons united together for any common purpose, 36 Cyc. 499; also as a number of persons united together by mutual consent in order to deliberate, determine and act jointly for some common purpose. 2 Bouvier's Law Dict. (Rawles Rev.) 1010. Persons thus associated for a purpose that is charitable would, *ex vi termini,* be a charitable society. It is evident that the Legislature intended that the word "society" as used in this statute should include "bodies of men united for the advancement of religion and learning and for other pious and charitable purposes," thus recognizing the duty enjoined upon it by the Constitution to encourage such associations. Is it unreasonable to say that this board of trustees as constituted and organized is fairly within the definition?

The only case in a court of last resort cited by the commissioner of taxes is *Hooper* v. *Shaw*, 176 Mass. 190. In that case a legacy was given to the New England Trust Co. of Boston with directions to pay the income thereof to needy aged men and women. The legacy was held not exempt as a legacy "to or for a charitable institution." The case at bar is clearly distinguishable. That was a gift in trust to a trust company which was in no sense a charitable society or institution; here the legacy was to a board of trustees with power to incorporate to administer the trust. The will provided in an article not quoted for the perpetual succession of the board, in case they did not incorporate, on nomination by the surviving members of the board. It can fairly be gathered from the whole will that the testatrix intended to create a society or association, incorporated or not as seemed best, to administer the trust.

If the individuals named in the will as trustees had voluntarily associated themselves for the purpose of collecting funds to aid needy boys and girls in securing an education or if the legacy in question had been given as a foundation of a society thereafter to be formed for that purpose and they had associated themselves in accordance with the provisions of the will to receive the legacy, no one would question but that in so doing they had formed a charitable association or society. In that case their right to receive a legacy for the purpose of their associa-

tion would not be taxable under the statute in question. We think it is unreasonable to say, because their association is affected by the will, that the fund provided by the bounty of the testatrix shall be depleted to the extent of the tax. The State can well afford, considering the purpose to which the money is devoted, to let it pass untaxed; and we are loath to believe that the Legislature intended to take toll of benevolences calculated to supplement the State's efforts in the cause of education, or to give such a construction to the statute as would tend to nullify its manifest policy in this regard, so long as the language of the statute does not compel it.

We hold that under the provisions of this will the board of trustees are a charitable society within the meaning of the exemption clause of the statute, and that they are entitled to receive the legacy coming to them under the twenty-eighth article of the will exempt from the inheritance tax.

*The decree certified is reversed and cause remanded. Let a certificate go down.*