IN RE CHARLES DOWNER'S ESTATE.

February Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed May 11, 1928.

*Wm. B. C. Stickney* for the appellant.

*Erwin M. Harvey,* commissioner of taxes, for the State.

SLACK, J. The question for review is whether a certain legacy under the will of the late Charles Downer is subject to the collateral inheritance tax provided by Act No. 48, Laws 1919, Sec. 1, which reads as follows:

"Every person other than the father, mother, husband, wife, lineal descendant, stepchild, child adopted as such during his minority in conformity with the laws of this State, child of a stepchild or of such adopted child, wife or widow of a son, or husband of a daughter of a decedent, a bishop in his ecclesiastical capacity for religious uses within this State, or a city or town within this State for cemetery purposes, and every charitable, educational or religious society or institution other than one created and existing under and by virtue of the laws of this State and having its principal office herein, that shall receive in trust or otherwise a legacy or distributive share," etc., of a decedent's estate shall pay to the State the tax therein specified.

The material facts respecting the legacy in question are these: Mr. Downer bequeathed to the Burlington Trust Company of Burlington, Vermont, in trust for the town of Sharon, $100,000, the income from which, except so much thereof as is to be added from time to time to the fund itself, is to be paid to the town of Sharon each year "to be used by said town for permanent improvements upon the highways, bridges and public buildings of said town, or for the improvement and enlargement of the public schools of said town, or for the construction within said town of public buildings and for their furnishings and maintenance or for the purchase of books (preferably works of history, biography and science and fiction only that has become recognized of literary worth) and furnishings for the town library, and in fact to use said income generally for the permanent upbuilding of the town of Sharon, except that said income shall not be used in any industrial enterprise, nor shall any part

of the income be used at any time for defraying the current and regular expenses of the town * * * * * but it shall be used in doing things of a public nature which the town would not naturally do nor could afford to do at its own expense."

Further information respecting the uses to which the income from such fund may be applied appears from the following excerpts from the will: "My purpose is to create a permanent endowment trust fund for the town of Sharon on the conditions stated so that it may have more and greater public advantages than it would have ordinarily, that it may thereby attract as permanent residents a larger and better citizenship and that the town as well as its citizens may attain to a larger degree of prosperity. * * * * The town of Sharon needs to attract new citizens of character and intelligence who will improve the farms and residences, reclaim the abandoned lands, build homes for either permanent or part of the year occupancy and take an active interest in the general uplift of the town and its life and institutions."

The will contains numerous suggestions and directions respecting the expenditure of the money received by said town; the character, integrity and ability of the persons to be selected by the town to have charge thereof; the general supervision of the probate court for that district over such persons; etc., not necessary to be noticed since they do not affect the question before us.

The probate court held this legacy taxable under the statute in question and decreed accordingly from which the executor, both in this representative capacity and as a residuary legatee, appealed.

The appellant contends that this legacy is not subject to such tax because (1) the bequest is for a public charity, and the general policy of the law is that property devoted to such use shall not be taxed; (2) the law does not contemplate direct or indirect taxation of municipalities created trustees of such property, for such use, nor as beneficiaries; and (3) the municipality is expressly exempt.

That it is the general policy of the law not to tax public charities may be conceded, but when all the provisions of this legacy respecting the use to which the income therefrom may be applied are considered can it be said to constitute such a charity? In a legal sense, a public charity is defined to be a

gift applied consistently with existing laws for the benefit of an indefinite number of persons by bringing their minds and hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or restraint, by assisting them to establish themselves in life, or by erecting and maintaining public buildings or works, or otherwise lessening the burdens of government. *In re Centennial & Memorial Assn. of Valley Forge,* 235 Pa. 206, 83 Atl. 683. This, in substance, is the definition of a public charity adopted in most of the reported cases. Words and Phrases, Vol. II, p. 1074; Second Series, Vol. I, p. 642. In its widest sense "charity" denotes all good affections which men ought to bear toward one another, and in that sense embraces what is generally understood by benevolence, philanthropy, and good will. In a more restricted sense it means merely relief or alms to the poor. *Morice* v. *Bishop of Durham,* 9 Ves. 399; *Town of Hamden* v. *Rice,* 24 Conn. 350, 355. It is said in *Maine Baptist Miss. Con.* v. *City of Portland,* 65 Me. 92, that: "The word 'charity' as found in our decisions and statutes, is not to be taken in its widest sense denoting all the good affections which men ought to bear to each other, nor in its restricted and usual sense signifying relief to the poor, but is to be taken in its legal signification as derived chiefly from the statute of 43 Eliz. c. 4. Those purposes are deemed charitable which are enumerated in that act, or which by analogy are deemed within its spirit or intendment."

That many of the objects to which the income from this fund *may be* devoted are charitable in nature within the meaning of the foregoing definitions may be conceded, but it should be borne in mind that under the terms of this legacy none of such income need necessarily be used for those objects. It may all be used "for the permanent upbuilding of the town of Sharon, * * * * * be used in doing things of a public nature which the town would not naturally do nor could afford to do at its own expense." None of the income, it should be remembered, is to be used to lessen the burdens of government, that is, to defray the current and regular expenses of the town. The "things of a public nature" to which the income from such fund may be applied need not necessarily be things of a *charitable* nature. These terms are not synonymous. That the Legislature has not so regarded them is indicated by the language of G. L. 684, sub-div. VI which, in effect, provides that

real and personal estate granted, sequestered or used for *public,* pious or *charitable* uses shall be exempt from taxation. In the circumstances we cannot assume that such income will be 'applied to uses of a charitable nature. Because of the uncertainty respecting the use, or uses, to which the income from this legacy may be applied it cannot be said that such legacy constitutes a public charity as defined by the authorities, since it is undoubtedly the law that where power is given to apply a bequest, or the income therefrom, either to uses which are or those which are not within the classes included as charities the whole bequest fails as a charity. *Haynes* v. *Carr,* 70 N. H. 463, 49 Atl. 638; *Matter of Shattuck,* 193 N. Y. 446, 86 N. E. 455. "The question is, not," says Sir William Grant in *Morice* v. *Bishop of Durham, supra,* "whether he (the trustee) may not apply it upon purposes wholly charitable, but whether he is bound so to apply it." The only restriction placed upon the use of the income in the instant case, other than that relating to industrial enterprises, and the payment of the current and regular expenses of the town, is that it be used in doing things of a public nature, etc. Those things are left to the discretion of the beneficiary, subject to the approval of the probate court, and when determined, perhaps five or fifty years hence, may, or may not, be within the class of objects recognized by the courts as public charities. Standing thus it is obvious that while this legacy is philanthropic and benevolent in nature, it is not entitled to the status claimed for it by appellant.

So far as the second ground relied upon for a reversal is based upon the theory that this legacy constitutes a public charity it is disposed of by what has already been said.

■ ■ It is true, as claimed, that it is not the policy of the State to subject its own property, nor that of its municipalities which is devoted to a .public use, to a general property tax. There is an implied exemption in favor of property so owned and used which can be overcome only by most positive legislative enactment. *Stiles* v. *Newport,* 76 Vt. 154, 162, 56 Atl. 662. It is also true, as claimed, that the tax imposed by the statute under consideration is not a property tax, but is a condition placed by the State upon the privilege accorded by it of taking property by devise or descent. *In re Estate of Hagar,* 98 Vt. 235, 126 Atl. 507; *In re Hickok's Estate,* 78 Vt. 259, 62 Atl. 724, 6 Ann. Cas. 578. It is argued with much plausibility

that since it is not the policy of the State to tax the property of its municipalities which is devoted to public use it could not have been the intention of the Legislature to tax the right of such municipalities to receive property for such use. Among the cases cited in support of this proposition are: *In re Inheritance Tax Macky Estate,* 46 Colo. 79, 102 Pac. 1075; *Henson* v. *Monday,* 143 Tenn. 418, 224 S. W. 1043; and *Knowlton* v. *Moore,* 178 U. S. 41, 44 L. ed. 969, 20 Sup. Ct. 747, which, but for certain provisions of our statute presently to be noticed, sustain appellant's contention.

The power of the State, however, to tax its own property, and that of its municipalities, is universally recognized. It has been recognized and asserted by our own Legislature. See G. L. 688 relating to the taxation of land owned by one municipality but located within the territorial limits of another; G. L. 465 relating to the taxation of land owned by the State for forest reserves; Act No. 22, Laws of 1925, relating to the taxation of land held by the State for game refuges, etc.

It is equally well established that property exempt from a general property tax may be, and unless otherwise provided is, subject to an inheritance tax; that is, such tax is assessed upon the valuation of the entire estate or distributive share notwithstanding the fact that some part thereof is exempt from taxes of the former class. *Plummer* v. *Coler,* 178 U. S. 115, 44 L. ed. 998; *Murdock* v. *Ward,* 178 U. S. 139, 44 L. ed. 1009, 20 Sup. Ct. 775; *Wallace* v. *Myers* (C. C.), 38 Fed. 184, 4 L. R. A. 171; *In re Sherman's Estate,* 153 N. Y. 1, 46 N. E. 1032; *Strode* v. *Commonwealth,* 52 Pa. 181; *Cornett's Exrs.* v. *Commonwealth,* 127 Va. 646, 105 S. E. 230. It is true that the statutes under which these cases arose taxed the right to transmit property rather than the right to receive it, that is, the burden fell on the testator, so to speak, rather than on the beneficiary, but in *Plummer* v. *Coler, supra,* it is said, quoting from *In re Sherman's Estate,* "Whether these laws are regarded as a limitation on the right of a testator to dispose of property by will, or upon the right of devisees to take under a will, or the right of heirs or next of kin to succeed to a property of an intestate, is not material." While the fact that our statute taxes the beneficiary rather than the decedent and will, consequently, in the instant case, result in taxing the right to receive property which in the hands of the legatee will

be exempt from a general property tax, bears on the question of legislative intent, it has nothing whatever to do with the power of the State to impose such a tax. Such power in fact is conceded.

With these general propositions in mind we will now inquire concerning the scope and effect of the statute in question, that is, whether the Legislature intended it to include legacies of this character; since upon such intent rests the solution of the question under consideration. In approaching this question we are not unmindful of what is said in *In re Estate of Curtis*, 88 Vt. 445, 92 Atl. 965, respecting the liberal construction to be given to words of exemption found in this and similar statutes. The intent of the Legislature is to be gathered from the statute itself, taken as a whole, if possible; if not, resort may be had to such extrinsic matters as the Legislature may presumably have had in mind at the time of its enactment. *In re James*, 99 Vt. 265, 271, 132 Atl. 40. Clearly, there is nothing in the language of the statute itself to indicate an intent to exempt from its operation legacies like this one. On the other hand, it, in effect, provides, in clear and unmistakable terms, that every legatee or distributee other than those specifically named therein shall be subject to such tax. To be sure cities and towns are among the class named, but as to them the exemption is expressly limited to legacies ''for cemetery purposes.'' The fact that these municipalities are mentioned at all is most significant. In the first place, any possible inference that the Legislature intended to include them among the charitable, educational and religious societies and institutions mentioned in the statutes is thereby repelled. This disposes of the third ground upon which a reversal is urged. Then, too, had the Legislature intended the exemption which impliedly exists in favor of such municipalities respecting other taxes to apply to this tax why any mention of them? It was because the statutes of Colorado and Tennessee relating to inheritance taxes were silent as to the institutions sought to be taxed in the cases referred to from those states that it was held that the implied exemption of the property of such institutions from general taxes applied to the inheritance tax. Again, if the Legislature intended all legacies to cities and towns to be exempt from this tax why special mention of legacies ''for cemetery purposes'' only? It seems apparent that the language of the statute, taken as a whole, in-

dicates an intent to tax, rather than to exempt, legacies of this character. But if there be doubt about this, we have a typical case for the application of the principle of interpretation—*expressio unius est exclusio alterius*. While this maxim expresses a rule of construction and not of substantive law (*United States* v. *Barnes*, 222 U. S. 513, 519, 56 L. ed. 291, 32 Sup. Ct. 117; *City of New York* v. *Davis* [C. C. A.], 7 Fed. [2nd] 566, 575), and is not of universal application (*Ford* v. *United States*, 273 U. S. 593, 611, 71 L. ed. 793, 801, 47 Sup. Ct. 531, and cases there cited), the instances in which it may be invoked are pointed out by Mr. Chief Justice Taft in the latter case. It is there said: "This maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment." Such is the situation in the instant case. That which is expressed in the statute as exempt from the tax, namely, legacies "for cemetery purposes," is so set over by way of strong contrast to that which is omitted, namely, legacies for other purposes, that the contrast forces the affirmative inference that that which is omitted, namely, legacies of the latter class, must have been intended to have opposite and contrary treatment, *i. e.,* that they are subject to such tax.

In considering the taxability of this legacy we have treated the question as depending upon the status of the beneficiary rather than the status of the trustee—the view most favorable to the appellant.

Of course, if the status of the trustee is determinative of the question before us, as the language of the statute seems to indicate, the legacy is taxable since the trustee, namely, the Burlington Trust Company is in no sense a charitable, educational or religious society or institution within the meaning of the statute. We cannot accede to appellant's claim that there are two trustees, one of which is the town of Sharon. While the will specifies the use, or uses, to which the fund shall be devoted by the town, the town is, nevertheless, in the eye of the law, the beneficiary and not a trustee. Moreover, assuming that the appellant is right about this, the result, for the reasons stated, is the same.

*Decree of probate court affirmed. Let the result be certified to that court.*